606 So.2d 1262 (1992)
In re the Matter of the ADOPTION of K.M.C.
No. 92-2493.
District Court of Appeal of Florida, Fourth District.
October 28, 1992.
*1263 Peggy Rowe-Linn, and Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, for appellants, prospective adoptive parents.
Michele I. Nelson of Paxton, Crow, Bragg, Smith & Keyser, P.A., West Palm Beach, for appellee Legal Aid Soc. of Palm Beach County.
PER CURIAM.
Appellants, as prospective adoptive parents, challenge the trial court's order upholding an intermediary's removal of the child from the adoptive home and terminating the adoptive parents' adoption petition. We agree with appellants and remand the case to the trial court with instructions to order the child to be returned immediately to the adoptive parents and to vacate its order terminating the adoption petition. Accordingly, the final home investigation should resume when the child is returned to the adoptive parents' home. See § 63.125, Fla. Stat. (1992).[1]
The prospective parents were preliminarily approved to adopt a child through an intermediary as permitted under Florida law. See § 63.032(8), Fla. Stat. The intermediary represents the adoptive parents and acts only as an intermediary for the child's placement. See § 63.085(1)(f), Fla. Stat. Before a child can be placed in a prospective adoptive parent's home by an intermediary, a preliminary home study must be performed by a licensed professional or agency. See § 63.092(2), Fla. Stat.
After the court has entered an order preliminarily approving the adoption, the adoptive parents may file an adoption petition. See § 63.112, Fla. Stat. Upon entry of the preliminary order, the intermediary ceases to be the child's guardian, the adoptive parents are the child's guardian, and the intermediary assumes a supervisory role. See §§ 63.122(1), 63.052(1), Fla. Stat. A final home investigation as detailed by section 63.125(1), Florida Statutes, must be conducted before the adoption becomes final. However, the final adoption hearing must not be held sooner than 90 days after the child is preliminarily placed in the adoptive *1264 parents' custody. See § 63.122, Fla. Stat.
Some two weeks after entry of the preliminary order in this case, the prospective father was arrested while the prospective parents' adoption petition was pending. Without any prior notice or order of the court, the intermediary retrieved the child unilaterally from the prospective parents and placed the child in foster care. After two hearings, the trial court terminated the parents' adoption petition and ordered the intermediary to seek another adoptive family.
We note that the intermediary withdrew properly as the prospective parents' attorney at the hearing before the trial court. However, it was improper for the intermediary to become an advocate during the hearing and cross examine the adoptive parents. Rather, after withdrawal, the intermediary could have testified as a witness, if necessary. However, in light of the increase in intermediary adoptions, we invite The Florida Bar to provide guidance regarding the intermediary's ethical obligations to the court, the prospective parents, and the child due to the inherent conflict which will arise during the interim period between the preliminary placement and the final adoption in a case where a significant event occurs after the preliminary placement.[2]
Appellants raise several meritorious points which we choose to address. First, as to the child's disposition, we agree with appellants that the intermediary erred when she removed the child unilaterally after the court's preliminary approval and placement, in this case, where it was conceded by all parties that there were no allegations of child abuse, neglect or abandonment as defined by the Florida Legislature, nor was there any allegation that the prospective parents were no longer suitable. See Chapters 39, 415, Fla. Stat. (1991).
The intermediary's conduct clearly exceeded her supervisory role as contemplated by section 63.122(1), Florida Statutes and infringed upon the adoptive parents' rights as the child's guardian. See § 63.052(1), Fla. Stat. Under the facts herein, once the intermediary was notified of the arrest, it would have been appropriate for her to bring the matter to the trial court's attention by requesting a status conference. This court's ruling does not suggest that a child preliminarily placed in an adoptive home may not be removed when the child is being abused, neglected or abandoned or at risk for such conduct. Under such facts, which clearly are not present in the instant case, the intermediary must avail herself of the statutory abuse reporting procedures set forth in Chapters 39 and 415 of the Florida Statutes.
We further agree with appellants that the trial court erred when it upheld the child's removal from the home and terminated the prospective parents adoption petition without the benefit of a licensed professional's opinion as to whether the prospective father's arrest adversely affected the child's home environment since the approved preliminary placement.
The trial court found that due to the prospective father's arrest, the adoptive family's economic stability was in question, its emotional tranquility was in doubt, and the parents could not give the child the unlimited attention it deserved. In this case, there was no competent evidence to support the court's factual conclusions because we find that the adoptive parents' testimony was unrebutted.
Second, Chapter 63's statutory scheme requires that a trained and qualified professional assess the adoptive parents' home environment at all pertinent times during the adoption process and that the trial court consider the professional reports prior *1265 to judgment on the adoption petitions. See §§ 63.092(2), 63.125(1), 63.022(2)(c), Fla. Stat. Again, in a case of actual abuse, neglect, or abandonment or in a case with a child at risk of such conduct, the provisions of Chapters 39 and 415 provide a mechanism for immediate removal of the child. However, absent such conduct after a preliminary placement, the trial court must abide by Chapter 63's basic safeguard that social studies be completed and considered by the court prior to final judgment on adoption petitions. See § 63.022(2)(c), Fla. Stat.
Accordingly, this case is remanded with instructions to immediately return the child to the adoptive parents, vacate the order terminating the adoption petition, and order that the final home investigation be conducted as set forth in section 63.125, Florida Statutes. Additionally, no motion for rehearing will be entertained and the clerk is directed to issue the mandate forthwith.
POLEN, STONE and FARMER, JJ., concur.
NOTES
[1] Chapter 63 was redrafted substantially effective July 1, 1992. See chapter 92-96, Laws of Florida. All references herein are to the 1992 statutes.
[2] The National Committee for Adoption (NCFA) estimates that in 1986 there were 51,157 unrelated domestic adoptions in the United States; 68.6% arranged by agencies and 31.4% arranged by private intermediaries. Staff of Fla. Senate Comm. on Judiciary, SB 756 (1992), Staff analysis. During 1990, there were 7,368 related and unrelated Florida adoptions with approximately 1,330 (18%) arranged by private intermediaries. Id.